**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Michael Washington, | ) | CASE NO. 1:08 CV 2987 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Marymount Hospital, Inc., | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendant. | ) | |

<u>Introduction</u>

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 21) and plaintiff's Motion to Strike (Doc. 30).   This case alleges gender discrimination in employment.  For the following reasons, the Motion for Summary Judgment is GRANTED and the Motion to Strike is GRANTED IN PART and DENIED IN PART.

**(1) Motion to Strike**

Plaintiff asks this Court to strike all exhibits attached to defendant's Motion for Summary Judgment, including the deposition transcript excerpts and exhibits, as well as the entire statement of facts and the brief in support of the Motion for Summary Judgment. The Motion to Strike is denied as to the deposition transcript and deposition exhibits given that

1

defendant has now filed the complete deposition and exhibits. While plaintiff continues to ask the Court to strike most of the deposition exhibits, the request is unwarranted as discussed herein. The Motion to Strike is granted as to the remaining exhibits (Doc. 21 Exs. A-Q) which have not otherwise been authenticated. These exhibits consist of hand-written and typed complaints made by plaintiff and employees concerning plaintiff. Nonetheless, as discussed herein, plaintiff's own deposition testimony verifies the essential contents of these complaints as he discussed the circumstances surrounding these incidents. Consequently, the Statement of Facts, below, is taken from plaintiff's deposition testimony.

Notwithstanding that plaintiff has sought to strike all of defendant's evidentiary support as well as the Motion for Summary Judgment itself, plaintiff's facts in support of his own brief are mainly verified by plaintiff's affidavit which states, "I have carefully reviewed the Statement of Facts contained in Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment and the statements made are true." (pltf. aff. ¶ 14) Clearly, this is an improper method of establishing facts in opposing a motion for summary judgment. *See* Fed.R.Civ.Pro. 56. Additionally, as discussed below, plaintiff attempts to authenticate some of his own evidence through an affidavit of his attorney who simply avers that the documents were obtained during discovery. Nevertheless, plaintiff's facts are generally in accord with defendant's statement of facts.

To avoid confusion as to what evidence has been considered by this Court in determining the Motion for Summary Judgment, specific references will be made to the record.

**(2) Motion for Summary Judgment**

2

**Facts**

Plaintiff, Michael Washington, filed his Complaint against defendant, Marymount Hospital, Inc.,[1] in the Cuyahoga County Common Pleas Court.  Defendant removed the case to this Court on the basis of federal question jurisdiction.

Plaintiff began his employment with defendant around 1987.   In 1995, he was transferred to the Radiology Department as a file clerk, a full-time position.  Plaintiff is currently employed by defendant in that position.  (pltf. depo. 10-12)

In mid 2002, plaintiff was promoted to Lead File Room Technician, a newly created position.  Christina Webb made the decision to promote plaintiff. He received a raise in pay and although he did not "officially" supervise any employee, he had a "higher accountability" which included some scheduling, "keeping an eye on things," training employees, and being the person people came to for answers.  Plaintiff remained in that position until March 2007, when he voluntarily resigned and was reassigned to the position of file clerk.   (pltf. depo. 28-34)

In March 2006, plaintiff submitted a written complaint to Rick White, manager of the Radiology Department, which conveyed the following incident.  Co-worker, Valerie Jaworski-Day, called plaintiff over to the front desk.  In the presence of the front desk receptionists, Rose and Terri, Jaworski-Day asked plaintiff in a sarcastic tone, "Why isn't there anyone answering the phone back there.  You supposed to be some kind of *coordinator* or something, right?" Plaintiff "felt humiliated just by her lack of respect and attempts to challenge me in front of other personnel."  Plaintiff testified that Jaworski-Day implied that

---

[1]        Plaintiff also named John Does 1-2, but they have not been identified.

3

plaintiff was not doing his job, and that her tone was sarcastic and disrespectful.  Although

plaintiff was just documenting the issue and did not bring it to White's attention for the

purpose of creating an official incident, White subsequently facilitated a meeting between the

parties and their supervisors.  When confronted with plaintiff's complaint, Jaworski-Day

shouted that she was just kidding and she eventually left the meeting sobbing. (pltf. depo. 72-

78, 175; Ex. 13[2], 34)

       In April 2006, Tiara Brooks, the daughter of full-time employee Terri Brooks, sent

plaintiff an e-mail regarding the scheduling of her hours.  Plaintiff testified that the part-time

positions in the department were filled by children of department employees.  The children

were high-school students of the husband of one of the department supervisors.  A

controversy had arisen as to the scheduling of their hours.  Originally, the students just

showed up and worked as long as they wanted.  Eventually it was decided that there would be

a list of times and available hours for which the students would sign up.  Plaintiff considered

Tiara's e-mail to make a false claim that he had never made the hours available to her.  Also,

because it was written in all capital letters, plaintiff considered it to be shouting at him.  The

following day, plaintiff submitted a written complaint about Terri Brooks, stating that she and

---

[2]      Deposition Exhibit 13 is plaintiff's own typed account of the incident.  It should
be noted that the Motion to Strike seeks to strike Exhibit 13. The request is
completely unwarranted. Plaintiff was asked specifically at deposition, "Is Exhibit
13 a document that you wrote, Mr. Washington?"  He responded, "Yes."  (pltf.
depo. 72) Plaintiff further testified that he wrote Exhibit 13 "to document the
event" and that he gave it to his boss, Rick White. (*Id.* 73) Plaintiff also seeks to
strike Exhibit 34 which is his own typed account of the meeting with Jaworski-
Day and the supervisors.  Plaintiff testified at deposition that this document was
part of a package of documents that he gave to Christina Webb to "back up" his
claim that defendant had acted unfairly toward him. (pltf. depo. 175)

4

her daughter, Tiara, on a prior occasion, had questioned him regarding Tiara's hours.  At some point thereafter, Rick White resolved the scheduling issue by capping hours. (pltf. depo. 78-86; Ex.14[3])

In June 2006, employee Marie Duale submitted a written complaint regarding comments made to other employees about her by plaintiff which included, "if they wouldn't have hired a cocktail waitress to set up the file room" and "they had a secretary over there for years that didn't know what she was doing."  In his deposition testimony, plaintiff verified that he made these comments.  He testified that one day he was on his knees searching for films in the Mammography Department and a co-worker, Cynthia Kasmer, said to him, "Oh, are you having a bad day?"  Plaintiff considered the comment to be highly sarcastic and took offense to it. Plaintiff testified that he responded, "You'd be having a bad day also if you worked behind someone that took this serious job with the seriousness of a cocktail waitress." Plaintiff testified that he was referring to Marie Duale and that he knew Duale had previously worked as a cocktail waitress. Shortly thereafter, plaintiff made another comment to a co-worker that things were difficult in the department "because for years they had the wrong person over there, and it's a mess."  Plaintiff and the co-worker knew that plaintiff was referring to Duale. (pltf. depo. 91-102)

Defendant's Human Resources Department conducted an investigation after receiving Duale's complaint.  Plaintiff admitted making the comments.  The two co-workers to whom

---

[3]     Exhibit 14 is also included as one which plaintiff asks the Court to strike.  Exhibit 14 is the e-mail that Tiara Brooks sent to plaintiff. Plaintiff was asked at deposition, "Can you identify Exhibit 14, Mr. Washington?"  He responded, "Yes."  He was then asked, "This appears to be an e-mail that Tiara Brooks sent to you to which you responded?"  Plaintiff answered, "Yes." (pltf. depo. 78)

plaintiff had made the comments submitted written statements verifying them.  On July 19,

2006, plaintiff received a written warning.  The Discipline Report stated that plaintiff had

violated defendant's Professional Conduct and Anti-Harassment Policy and had engaged in

inappropriate conduct.  The report also stated that the two incidents were supported by

witness statements and plaintiff's own admission.  Finally, the report stated, "Failure to

improve wi[ll] result in progressive disciplinary action up to and including termination of

employment." (pltf. depo. 96-98; Ex. 19[4])

Around December 2006, defendant received several more complaints from employees

stating that plaintiff referred to women in derogatory terms. Defendant also learned through

employee complaints that plaintiff was using a work computer to access his personal e-mail to

view inappropriate material.  Plaintiff admitted at deposition to referring to women at work as

"broads" and "chicks,"accessing his personal e-mail during work time to view inappropriate

content, and that both violate defendant's anti-harassment policy.  (pltf. depo. 132-136)

By hand-written memorandum of March 5, 2007, plaintiff acknowledged his

misconduct, including inappropriate comments and use of the personal e-mail.  On that same

date, defendant sent plaintiff a letter serving as "written confirmation that an investigation

surrounding reports of multiple incidents of inappropriate conduct on your part has been

ongoing... [which] include violations such as inappropriate language, derogatory names for

women, inappropriate use of the internet to view personal... sites that violate the hospital's

anti-harassment policy."  The letter acknowledged the July 19, 2006 written warning for

inappropriate conduct and notified plaintiff  that he was receiving a three day suspension and

---

[4]        Plaintiff now does not dispute that Exhibit 19 is admissible.

6

was required to participate in defendant's Employee Assistance Program.  The next day, defendant issued an Employee Corrective Action Report imposing the suspension.  This report indicated the infraction as "multiple events reported of inappropriate conduct and violations of hospital policy on internet use...  Violations include: derogatory statements toward women, use of personal email accounts during work time, violation of anti-harassment policy, ..."(pltf. depo. 122-136; Ex.21; Ex. 25; Ex. 26[5])

On March 26, 2007, plaintiff voluntarily stepped down from the Lead File Room Technician position, citing "personal issues." (pltf. depo. 151–156; Ex. 28[6])

On August 6, 2007, plaintiff submitted a lengthy written memorandum regarding an incident he had with an employee, Sharon Sobona, who was also a patient of defendant, regarding whether she was permitted to secure her own x-ray films from the Radiology Department.  Plaintiff stated that Sobona was hostile, aggressive, unprofessional, and rude to him.  Plaintiff stated that he knew her "to be disdainful, intolerant, condescending and patronizing of minorities, especially Black people."  Defendant conducted an internal investigation by interviewing and collecting written statements in August of employees who observed or were involved in the incident.  Plaintiff testified that he met with Rick White and Christina Webb on October 23, 2007 regarding the investigation and although Sobona was

---

[5]  Plaintiff seeks to strike Exhibits 25 and 26, the March 5, 2007 letter notifying plaintiff of his suspension and the Employee Corrective Action Report imposing the suspension.  Aside from the fact that plaintiff himself submitted the Employee Corrective Action Report as evidence in support of his own brief, plaintiff identified both of these documents at deposition.  (pltf. depo. 133-134)

[6]  Plaintiff seeks to strike Exhibit 28, his own resignation letter, although he was asked at deposition, "Is this the letter that you sent?"  He answered, "Yes." (pltf. depo. 154)

not disciplined, plaintiff was told that "this had spun out of control," even though plaintiff had "acted in compliance with policy." (pltf. depo. 162-176; Ex. 32[7])

Plaintiff filed an EEOC charge on October 16, 2007 alleging discrimination based on race and sex.  Plaintiff cited his March 7, 2007 suspension and that he "complained of repeated harassment that I've received from co-workers and nothing was done."  Plaintiff subsequently received a Right to Sue letter from the EEOC with its determination that insufficient evidence was found to establish a violation.

Plaintiff thereafter filed this Complaint which sets forth four claims.  Count One alleges race discrimination and hostile work environment under Title VII.  Count Two alleges retaliation under Title VII.  Counts Three and Four assert the same claims under Ohio's anti-discrimination statute.

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates

---

[7]      Plaintiff does not dispute that Exhibit 32 is admissible.

the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the

evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) Gender Discrimination**

Although Counts One and Three are entitled "racial discrimination" under Title VII and Ohio law, plaintiff now argues that he suffered gender discrimination.  Because the factual basis of the Complaint relates that plaintiff was treated differently than female colleagues, the Court assumes that he has alleged a gender discrimination claim in Counts One and Three.[8]

Although he did not specifically allege a mixed-motive claim in his Complaint, plaintiff now raises a mixed-motive discrimination claim under 42 U.S.C. § 2000e-2(m).

The Sixth Circuit has stated,

> In *White v. Baxter Healthcare Corp*., 533 F.3d 381 (6th Cir.2008), this Court held that compliance with the *McDonnell Douglas/Burdine* burden-shifting framework is not required in order to establish a Title VII mixed-motive claim at the summary judgment stage. Instead, an employee asserting a Title VII mixed-motive claim need only produce evidence sufficient to convince a jury that (1) the defendant took an adverse employment action against the employee, and (2) 'race, color, religion, sex, or national origin was a motivating factor' for the employer's adverse employment action.  This burden is not onerous, and the employee may satisfy the burden with either direct or circumstantial evidence.

*Hashem-Younes v. Danou Enterprises Inc*., 311 Fed.Appx. 777 (6th Cir. 2009).  *See also*

*Graham v. Best Buy Stores, L.P.,* 298 Fed. Appx. 487 (6th Cir. 2008) (The *McDonnell Douglas* burden-shifting framework does not apply to mixed-motive claims. A mixed-motive

---

[8]    The elements of a discrimination case are the same under federal Title VII law and Ohio law, so both can be considered together. *Staunch v. Cont'l Airlines, Inc*., 511 F.3d 625, 631 (6th Cir.2008).

10

discrimination claim survives summary judgment if there are any genuine issues of material fact concerning defendant's motivation for its adverse employment decision.")

Plaintiff also asserts a single-motive claim which is evaluated using the well-established *McDonnell Douglas* burden-shifting analysis which requires plaintiff to establish a prima facie case of discrimination by showing that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.  *Graham,* 298 Fed. Appx. at 493 (citations omitted).  Once plaintiff satisfies the prima facie case, the burden shifts to defendant to produce a legitimate, non-discriminatory reason for its action.  If it does so, the burden of production shifts back to plaintiff to produce evidence showing that this reason is pretextual. *Id.*

Defendant argues that plaintiff suffered no adverse employment action, a required element in either a mixed-motive or single-motive discrimination claim.  Plaintiff argues that the following constitute adverse employment actions: the July 19, 2006 written warning, the March 5, 2007 suspension without pay, and the constructive demotion from the position of Lead File Room Technician in late March 2007.

In *Novotny v. Elsevier*, 291 Fed.Appx. 698 (6th Cir. 2008), the Sixth Circuit summarized its understanding of an adverse employment action:

> In *Hollins v. Atlantic Co.,* 188 F.3d 652 (6th Cir.1999), this Court explained a materially adverse employment action as follows:
>
> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a

11

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* at 662 (citation omitted). We have consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable. *See, e.g., Jacklyn v. Schering Plough Healthcare Prod.*, 176 F.3d 921, 930 (6th Cir.1999)...

*See also Freeman v. Potter*, 200 Fed.Appx. 439 (6ᵗʰ Cir. 2006) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761(1998) (other citations and internal quotations omitted):

An adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Such action usually inflicts direct economic harm. An employment action must amount to a materially adverse change in the terms or conditions of employment to be actionable. The action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A *de minimis* employment action is not materially adverse and, thus, not actionable. In other words, a 'bruised ego' caused by trivial employment actions is not sufficient.

The parties dispute whether the July 19, 2006 written warning constitutes an adverse employment action. For the following reasons, the Court agrees with defendant.

Defendant asserts that the warning did not cause a materially adverse effect to plaintiff's employment. Plaintiff contends that it did have such an effect because the written warning was the prerequisite for the suspension.

"[L]etters of reprimand or other written warnings are adverse employment actions only if they bring about some sort of material negative change in the terms and conditions of employment." *Watson v. Lowe's Home Centers, Inc.*, 2009 WL 728547 (E.D.Mich. March 19, 2009) (citing *Jones v. Butler Metropolitan Housing Authority*, 40 F. Appx. 131, 137 (6th Cir. July 2, 2002) and *Reid v. Madison County*, 1999 WL 196560 (6th Cir. Apr.1, 1999). *See also Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215 (10ᵗʰ Cir. 2006) ("A written warning

12

may be an adverse employment action only if it effects a significant change in the plaintiff's employment status.")

Plaintiff contends that because the written warning was noted as previous corrective action to the three day suspension, the warning actually constituted an adverse employment action.  The warning itself, however, did not bring about some material negative change in the terms and conditions of plaintiff's employment.  Thus, the Court does not consider it to be an adverse employment action.

The three day suspension, on the other hand, may have been an adverse employment action.  The suspension was without pay.  (pltf. aff. ¶ 8) In *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 801 (6th Cir.2004), the court held that an employee's suspension without pay for over a month was materially adverse for the purpose of her retaliation claim even though she was later restored to her position with back pay.  *See also McKethan-Jones v. Ohio Dept. of Health,* 7 Fed.Appx. 475 (6th Cir. 2001) (The court found that a five day suspension without pay was an adverse employment action.)  Although plaintiff's suspension herein was for only a three day period, the Court errs on the side of caution and finds it to be an adverse employment action.

Finally, plaintiff argues that his voluntary resignation from the Lead File Room Technician position was actually a constructive demotion.

To demonstrate a constructive discharge, a plaintiff must show by evidence that his employer deliberately created intolerable working conditions, as perceived by a reasonable person, and that the employer did so with the intention of forcing the employee to quit. *Logan v. Denny's, Inc.,* 259 F.3d 558 (6th Cir. 2001) (citations omitted).  The court looks at both the

employer's intent and the employee's objective feelings. *Id*.  Various factors are considered in determining whether a reasonable person would have felt compelled to resign: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id. See also Ejikeme v. Violet*, 307 Fed.Appx. 944 (6th Cir. 2009) (citing the same).

Plaintiff asserts that defendant permitted him to be badgered and humiliated by other employees and that it also humiliated him through unjustified discipline. For the following reasons, the Court is not persuaded.

As discussed above, on the occasions of his written warning in July 2006 and his three day suspension in March 2007, plaintiff admitted to his conduct and that it violated defendant's professional conduct policy. Plaintiff argues that female employees did not receive the same discipline as evidenced by the following.

Plaintiff points to a Discipline Report[9] which indicates that a radiology file clerk, whose name is redacted, received an Oral Written Warning for sending a patient's mammography films to the patient's place of employment rather than to the address stated in the request.  The Discipline Report indicates that this was a HIPPA violation, although

---

[9] The report is appended to plaintiff's brief as Exhibit 4 but is "authenticated" by one of plaintiff's attorneys who states that it was produced by defendant during discovery.  The affiant, however, is not a representative of defendant whose personal knowledge can authenticate the document.

14

unintentional. Assuming the employee at issue was female, the unintentional HIPPA violation has no similarity to the conduct plaintiff engaged in.

Plaintiff also points to the incident wherein he was on his knees searching for films in the Mammography Department and a co-worker said sarcastically to him, "Oh, are you having a bad day." This precipitated his remarks about Marie Duale. Plaintiff argues that for this sarcasm directed toward him, the female employee received no discipline at all although plaintiff was disciplined for violating the same policy. This is conjecture on plaintiff's part. There is no evidence that the employee's sarcastic comment, "are you having a bad day," violated defendant's policy. On the other hand, plaintiff admitted to referring to Marie Duale as a cocktail waitress. Defendant considered this to be a violation of its Professional Conduct and Anti-Harassment Policy. Plaintiff now argues,"[defendant's] interpretation of 'cocktail waitress' as a gendered epithet was gratuitous. It is reasonable to infer an intent to humiliate him by casting him as a habitual sexist." (Doc. 36 at 18) Plaintiff's argument is unconvincing given that the evidence shows only that defendant conducted an investigation into workplace misconduct upon receiving a complaint and disciplined plaintiff after determining that the misconduct was admitted to by plaintiff and supported by witness statements. In fact, plaintiff himself testified at deposition that he referred to Duale as a cocktail waitress and agreed that he understood this to be an offensive way to refer to a woman at the workplace. (pltf. depo. at 95)

On this basis plaintiff has not shown by evidence that defendant deliberately created intolerable working conditions, as perceived by a reasonable person.

Nor has plaintiff demonstrated that defendant deliberately created intolerable working

conditions with the intention of forcing plaintiff to step down from his position.

As discussed herein, plaintiff admitted to his conduct, and his discipline was not unjustified.  Plaintiff argues that "his conversations with EAP counselor Kevin Peterca could only have confirmed that [defendant] desired his resignation."  (Doc. 36 at 18) Again, this is a conclusory statement based on supposition and not facts.  Moreover, plaintiff testified at deposition:

> Q.  Did your discussions with Mr. Peterca in any way lead to your decision to step down from your supervisory position?
>
> A.  Yes.
>
> Q.  How so?
>
> A.  When I expressed to him how I felt and that I felt that there was little chance at anything changing unless both sides agreed that there was something on both sides, that it would not be a great situation, and he kind of agreed that if I didn't believe anything would change, and that's the best that I remember, that that was kind of the point, if I truly didn't believe, he kind of supported me on that.
>
> ***
>
> Q.  Why did you feel the need to step down [from the position]?
>
> A.  I had just thought that it was absolutely hopeless for the things that I perceived to be the problems.  I thought it was hopeless, that I would never be able to overcome the problems, and that I was really afraid that this could happen again.
>
> Q.  And were the problems that you thought you were unable to overcome the problems that we previously discussed with lack of support in your leadership role, undue solicitation toward the staff member complaints, lack of giving you cover as a change agent--
>
> A.  Yes.
>
> Q. - - in the workplace?
>
> A.  Yes.

16

Q.  Anything other than that general- -

A.  Well, you know, and I was going to school also and I thought I'll concentrate on that and- -

(pltf. depo. 153, 155-156).  There is no evidence that defendant intended to compel plaintiff to resign his position.

On this basis, plaintiff's voluntary resignation was not an adverse employment action.

Given that plaintiff has established one adverse employment action, i.e., his three day suspension without pay, plaintiff must now show that his gender was a motivating factor for the suspension.  Although the burden in this regard "is not onerous," some claims do not survive this low burden.  *See Graham,* 298 Fed.Appx. at 495 ("The burden to establish a mixed-motive discrimination claim is not onerous, but ultimately [plaintiff] has not 'produced evidence from which a jury can logically infer' that [defendant's] termination was motivated in part by race.")

The Sixth Circuit recognizes that "the ultimate question at summary judgment on a mixed-motive case is whether the plaintiff has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that a protected characteristic was *a motivating factor* in the defendant's adverse employment action against the plaintiff."  *Wright v. Murray Guard, Inc.,* 455 F.3d 702 (6th Cir. 2006) (internal citations and quotations omitted).

Plaintiff argues that the suspension was due in part to gender bias in favor of similarly-situated female employees as evidenced by the fact that plaintiff was disciplined more severely than females similarly situated within the Radiology Department who engaged in similar or more serious conduct than plaintiff and yet were treated more favorably.  For the

17

following reasons, plaintiff fails to demonstrate this.

Plaintiff again points to the incident where he was on his knees searching for films in the Mammography Department and a co-worker said sarcastically to him, "Oh, are you having a bad day." Plaintiff asserts that this was a violation of the same Anti-Harassment and Professional Conduct Policy for which he was disciplined and yet the female employee was not disciplined. Plaintiff states that defendant admits that the same policy was violated during these two events but cites to no evidentiary support. As discussed above, this female employee's remark was not similar to plaintiff's remark about a "cocktail waitress" or his admitted derogatory names for women.

Plaintiff also points to a co-worker's mistake in sending radiology films to a patient's workplace and violating HIPPA. That employee received an oral warning. Plaintiff asserts that he, on the other hand, received a written warning for sarcasm and a suspension for accessing his personal mail and alleged inappropriate language. Again, assuming the employees were similarly situated in other relevant respects, the conduct was not similar and plaintiff endeavors only to downplay his violations by referring to them as mere "sarcasm" and "accessing his personal mail." This is an inappropriate attempt to substitute his personal judgment for that of defendant's business judgment.

Plaintiff argues that his gender was an improper motivation in his suspension because defendant was overly deferential to plaintiff's female co-workers while consistently displaying a dismissive attitude toward plaintiff when he reported female employees' behavior. The evidence does not support plaintiff's argument.

For these reasons, plaintiff fails to establish a mixed-motive discrimination claim.

18

Nor does plaintiff show that he survives summary judgment under a single-motive claim through the *McDonnell Douglas* burden-shifting analysis. Based on the foregoing, at a minimum, plaintiff fails to establish that he was treated differently than similarly-situated, non-protected employees.  On this basis, plaintiff does not make out a prima facie case.  Even assuming he did, plaintiff fails to show pretext.  As discussed herein, defendant was justified in giving plaintiff a warning and in suspending him.  He admitted his conduct. Plaintiff argues that a jury should determine whether his "cocktail waitress" comment, his references to "chicks" and "broads," and his use of the computer to view inappropriate material actually warranted discipline. Again, plaintiff is only asking this Court to substitute its judgment for that of defendant.  Finally, plaintiff again argues that pretext is shown by defendant's more favorable treatment of similarly-situated females.  As discussed herein, plaintiff has not demonstrated such. Plaintiff additionally points to two Discipline Reports of unknown employees.  In both instances, an oral written warning was given for the employee's failure to log off the computer which could have permitted someone to access patient information. (Doc. 36 Exs. 12, 13) Again, this conduct is not similar to improperly using the work computer to view inappropriate material.

Plaintiff fails to establish gender discrimination under a single motive claim. For these reasons, defendant's Motion for Summary Judgment is granted as to gender discrimination.

**(2) Hostile Work Environment**

Counts One and Three allege a hostile work environment under Title VII and Ohio law.  Defendant moved for summary judgment on these claims on the basis that the alleged conduct did not rise to the required level, the alleged conduct was not based on plaintiff's race

19

or sex, and defendant took prompt corrective action to respond to plaintiff's complaints. Plaintiff does not specifically address the hostile work environment claim or respond to defendant's arguments.  The Court finds that summary judgment on this claim is warranted for the reasons stated by defendant.

### (3) Retaliation

Counts Two and Four allege retaliation under Title VII and Ohio law.  Although defendant moves for summary judgment on this claim, plaintiff does not address retaliation or respond to defendant's arguments.  The Court finds that summary judgment on this claim is warranted for the reasons stated by defendant.

### (4) Race discrimination

Counts One and Three allege race discrimination under Title VII and Ohio law. Although defendant moves for summary judgment on this claim in tandem with the gender discrimination claim, plaintiff does not address race discrimination. The Court finds that summary judgment on this claim is warranted for the same reasons that judgment is warranted on the gender discrimination claim.

### <u>Conclusion</u>

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. 21) is granted and plaintiff's Motion to Strike is granted in part and denied in part.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  2/2/10

20